IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Dwane Heyward, | ) | Case No.: 4:21-cv-0754-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Careteam Plus, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) of the District of South Carolina.[1] (DE 70.) Plaintiff Dwane Heyward ("Plaintiff" or "Heyward") brought this action against her employer, Defendant Careteam Plus, Inc. ("Defendant" or "Careteam"), alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. ("Title VII"). (DE 1-1.) On February 28, 2022, Careteam filed a Motion for Summary Judgment seeking to dismiss Heyward's claims. (DE 50.) On March 28, 2022, Heyward filed a response Memorandum in Opposition to Careteam's Motion for Summary Judgment. (DE 56.) On April 4, 2022, Careteam filed a reply. (DE 64.)

On July 27, 2022, the magistrate judge issued the Report, recommending that Careteam's Motion for Summary Judgment be granted and the case be dismissed in its entirety. (DE 70.) For

---

[1]  The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

the reasons stated below, the Court adopts the Report and Recommendation and incorporates it herein and grants Careteam's Motion for Summary Judgment. (DE 50.)

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

Careteam[2] hired Heyward on August 9, 2018, as the Prevention Coordinator, and Heyward's primary duties were to coordinate and provide "HIV testing, recruitment and outreach activities for [the] identified population[s] for counseling, treating, and referrals" under the South Carolina Department of Health and Environmental Control ("SC DHEC") guidelines. (DE 50-1, 50-5.) An essential part of Heyward's job was developing and maintaining positive relationships with organization leaders and venue owners that would "ensure access to high[-]risk HIV [positive] population[s]" for purposes of providing sexually transmitted infection ("STI") education and other prevention services. (DE 5-5.) Heyward reported to Johanna Haynes ("Haynes"), Chief Executive Officer (CEO), until Cheryl Johnson ("Johnson") was hired as Chief Programs Officer (CPO) in October 2018 and subsequently became Plaintiff's supervisor. (DE 50-4.) Johnson remained Plaintiff's supervisor until September 2019; thereafter, Haynes returned to being Plaintiff's supervisor. In October 29, 2018, and April 10, 2019, evaluations, Plaintiff received a "meets" or "exceeds" rating in each category of the evaluations. (DE 56-2, pp. 40-66.)

Haynes advocated for developing a working relationship with the owners of the "gay bars" in the area which was of particular importance to Plaintiff's position because the "highest number of new infections to date" occur within the "gay community." (DE 56-2.)

---

[2] Careteam is a primary and specialty care provider ensuring access to comprehensive healthcare services regardless of patients' ability to pay.

The quality of these relationships determined the extent to which Plaintiff could effectively accomplish her other requisite duties, such as scheduling testing and outreach events; providing HIV prevention and other health related education sessions; and distributing condoms to the gay bars. Plaintiff avers that she had a fundamental problem with this perception that placed a priority on the gay community because gay people are not the only people who contract HIV. (DE 56-2.)

On October 28, 2019, Heyward called Kathleen Gregory ("Gregory"), Human Resources Administrator, and told her that she believed Haynes was harassing her by "questioning [her] job performance, . . . questioning if [she] needed to do anything over again, calling, making statements about [her], slanderizing [her] name . . . Making these type of statements about [she's] not a rule follower." (DE 50-12.) Haynes told Gregory that she believed Haynes was "creating and cultivating a toxic and racially charged work environment," and her action of calling Tiffany Joyner ("Joyner"), a former employee of Defendant, to inquire about Joyner's knowledge of Plaintiff residing with Johnson was "in direct relation" to an investigation that occurred in February 2019. (DE 50-12.)

On October 31, 2019, Gregory met with Heyward to follow up on their October 28, 2019, discussion. During this conversation, Plaintiff reiterated that she believed Haynes was harassing her and that it related to her race. On November 18, 2019, Haynes and Plaintiff met with Plaintiff's new supervisor, Kim Sinkway ("Sinkway"), Chief Operations Officer (COO). (DE 50-15.) During this meeting, Haynes asked Plaintiff if she was facilitating a program to educate the community on HIV prevention by means of using pre-exposure prophylaxis (PrEP), and Plaintiff admitted she had not done so, despite being asked by Haynes on several occasions to do so. (DE 50-16.) During the meeting, Plaintiff became agitated and either would not answer or would only provide a short and unhelpful response. (DE 70, p. 6.)

Consequently, Sinkway reprimanded Plaintiff on her "disrespectful" conduct that she exhibited during the meeting and during a prior meeting where Plaintiff called Haynes crazy. Plaintiff began expressing instances when she felt like Haynes had disrespected her too, including when Haynes inquired whether Plaintiff lived with her supervisor, Johnson. (DE 50-15.)

On December 9, 2019, Sinkway, Haynes, Plaintiff, and Kiasha Stinson, CPO and Plaintiff's new supervisor, met to discuss the Prevention Department. During this meeting, Haynes counseled Plaintiff again on her failure to engage and make connections with the gay community in the area, and requested that Plaintiff reach out to specific organizations. (DE 50-17.) Haynes gave specific directions and detailed guidance to Plaintiff. (Id.) Sinkway counseled Plaintiff again on the inappropriate tone she used when speaking with Haynes and provided guidance to Plaintiff throughout the rest of the meeting. (Id.)

On December 18, 2019, Plaintiff received a written warning for insubordinate and disrespectful behavior, specifically her behavior towards Haynes in prior meetings on November 18, 2019, and December 16, 2019. (DE 50-21; 50-22.) Sinkway, Stinson, and Gregory reviewed the written warning with Plaintiff. On January 5, 2020, Plaintiff submitted an e-mail and timeline detailing her claims of harassment and retaliation. (DE 56-2, pp. 73-74). Plaintiff asserted that she had been subjected to harassment and continual retaliatory behaviors ever since a February 2019 racial investigation.[3] (Id.) Gregory received this e-mail on January 6, 2020, and Careteam began a preliminary investigation into Plaintiff's allegations and consulted with their outside legal counsel. (DE 50-27.) Careteam placed Plaintiff on a paid administrative leave with full benefits beginning January 8, 2020, while the matter was investigated. (DE 50-28.) On January 9, 2020,

---

[3] Johnson requested an investigation after she heard that Careteam employees believed that she, as an African American, treated African American employees, including Plaintiff, more favorably than Caucasian employees. (DE 50-13.)

Plaintiff sent an e-mail to the Careteam Board of Directors, copying Stinson, Gregory, and Haynes, requesting an external investigation into her allegations of harassment. (DE 50-29.) She admitted in the same e-mail, however, that she had already been informed that an investigation into her allegations was in progress. (Id.) Plaintiff also mentioned that she filed a complaint with the Equal Employment Opportunity Commission (EEOC). (DE 70, p. 11.)

Based upon Plaintiff's response to the written warning, Plaintiff's supervisors felt she did not take any responsibility for her actions with respect to the performance of her department, indicate any remorse for her disrespectful statements, or show any intention of correcting the insufficiencies in her work performance, and, thus, the decision was made, with input from Haynes, Sinkway, Stinson, Defendant's external human resources consultant, and Defendant's outside legal counsel, to terminate Plaintiff's employment. (DE 50-30.) A termination letter was sent to Heyward on January 31, 2020. (DE 50-31.)

## DISCUSSION

On August 10, 2022, Heyward filed an objection to the Report. (DE 71.) However, to be actionable, objections to a report and recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir.

2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Heyward raises the following objections to the Report: 1) lack of consideration of Plaintiff's exemplary performance reviews and that Plaintiff's only employment issues arose with Haynes, a white supervisor while Plaintiff is African-American, among other specific facts; and 2) regarding Plaintiff's retaliation claim, a lack of consideration for Plaintiff's complaints prior to Plaintiff's first disciplinary infraction. (DE 71.) The Court addresses both objections *seriatim*.

First, as to the Report's lack of consideration for specific facts regarding Heyward's satisfactory job performance and Haynes's discriminatory actions towards Heyward, the Report ably and comprehensively addresses how Heyward's claims do not meet the test for a discrimination claim. A plaintiff asserting a claim for unlawful employment discrimination may proceed through two avenues of proof. First, he may establish through direct or circumstantial proof that a protected characteristic such as race was a motivating factor in the employer's adverse decision. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir.2005); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). When direct evidence is lacking, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination,

which "var[ies] depending on the nature of the case." Briggs v. Waters, 484 F. Supp. 2d 466, 477 (E.D. Va. 2007).

To establish a prima facie claim for wrongful termination, Plaintiff must present evidence (1) that she was a member of a protected class; (2) that she was performing at a level that met her employer's legitimate job expectations at the time of the adverse employment action; (3) that she suffered an adverse employment action; and (4) that the position remained open or was filled by a similarly qualified applicant outside the protected class.[4] See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). There is no dispute that Plaintiff is a member of a protected class. However, the parties dispute whether or not Heyward was performing at a level that met her employer's legitimate job expectations at the time of the adverse employment action. Plaintiff contends that she was performing at a level that met Defendant's legitimate expectations based on her October 29, 2018, and April 10, 2019 performance reviews. In both evaluations, Plaintiff received a "meets" or "exceeds" rating in each category. (DE 56-2, pp. 40-66). Heyward also points to isolated statements made by Haynes, first, on December 2, 2019 when Haynes told Heyward that she was doing a good job, and second, on November 18, 2019 when Haynes said she has a lot of confidence in Heyward and Heyward represents the company well. (DE 50-12.)

However, the relevant time to evaluate an employee's performance is at the time of the adverse action. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005). Heyward was terminated in January 2020, based on Plaintiff's supervisors' perception that Heyward did not take any responsibility for her actions with respect to the performance of her department, indicate any

---

[4] Since the second element of a prima facie discrimination claim is dispositive in this case, there is no need to get to the fourth element; however, the Record reflects that after Plaintiff was terminated, Haynes hired Stephen Batts, who is African-American, as Prevention Coordinator and, thereafter, promoted Brandon Brown, who is also African-American, to the position. (DE 50-37.)

7

remorse for her disrespectful statements to and regarding Heyward, or show any intention of correcting the insufficiencies in her work performance. (DE 50-30.) Moreover, it is clear from the record that Plaintiff and Haynes had a difference of opinion with respect to how Plaintiff should perform her job responsibilities. Though Plaintiff believed that she was properly handling her responsibilities, the record reveals that, in Haynes' opinion, she was not successfully engaging the gay community in Defendant's prevention efforts as specifically requested by Haynes. Plaintiff repeatedly failed to engage the gay community in Careteam's prevention efforts even though Haynes asked Plaintiff to do so on numerous occasions.

It is the perception of the decisionmaker, and not the plaintiff's self-assessment, that is the relevant inquiry when determining whether the plaintiff was meeting her employer's legitimate expectations. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir.2003). Therefore, Heyward fails to present sufficient evidence to meet this prima facie requirement. Heyward simply disagrees with the Report but fails to point to evidence in the record to contradict its finding therefore, the Court overrules Heyward's objections as they relate to her discrimination claim.

As to Heyward's retaliation claim, Heyward contends the Report fails to consider that Heyward "made complaints on at least 4 occasions before her very first discipline on December 16, 2019." (DE 71, p. 10.) Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity

and the adverse action. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998).

Protected activity involves opposing an unlawful employment practice which the plaintiff reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003). Title VII protects an employee who opposes "any practice made an unlawful employment practice by [Title VII] ," 42 U.S.C. § 2000e-3(a), or who "reasonably believes" she is opposing a practice made an unlawful practice by Title VII. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). If Plaintiff establishes a prima facie case, Defendants can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001). At that point, Plaintiff must present evidence sufficient to create a genuine issue of material fact that Defendants' legitimate, non-retaliatory reason is pretextual. Id.

Here, the Report found that Plaintiff had presented sufficient evidence of a causal connection between her protected activity and her adverse actions to create a prima facie case of retaliation. (DE 70, p. 23.) Therefore, the burden shifts to Defendant to produce a legitimate, non-retaliatory reason for the adverse actions. Defendant articulates legitimate, non-retaliatory reasons for the written warning and Heyward's termination: Heyward was given a written warning for insubordinate and disrespectful behavior, specifically her behavior towards Haynes in meetings on November 18, 2019, and December 16, 2019. (DE 50-21; 50-22.) Further, based on Plaintiff's written response to her warning, Plaintiff's supervisors felt she did not take any responsibility for her actions with respect to the performance of her department, indicate any remorse for her disrespectful statements, or show any intention of correcting the insufficiencies in her work

performance, and, thus, the decision was made to terminate Plaintiff's employment. (DE 50-30.) Given these non-retaliatory reasons, the burden returns to Plaintiff to present evidence sufficient to show that the reasons given were not the true reasons for the adverse action, but pretext for a retaliatory reason. See Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217-18 (4th Cir. 2016) ("To survive summary judgment, however, [an employee] need not squarely rebut his employer's explanation. Instead, [the employee] must cast sufficient doubt upon the genuineness of the explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing.").

In her objection to the Report, Plaintiff does not address how the reasons given for her written warning and termination are pretext for a retaliatory reason. Rather, she again rests her retaliation discussion on the number of complaints (4) and temporal proximity between her protected activity and the adverse actions. Although temporal proximity is sufficient to establish a prima facie causal connection between an employee's protected conduct and an employer's adverse action, under the McDonnell Douglas burden shifting framework, temporal proximity alone will not rebut a defendant's' legitimate and uncontested ground of termination. See Yancey v. Nat'l Ctr. on Insts. & Alts., 986 F. Supp. 945, 956 (D. Md. 1997) (granting summary judgment where plaintiff did not present any evidence of pretext "beyond temporal proximity"), aff'd, 141 F.3d 1162 (4th Cir. 1998); see also Guessous, 828 F.3d at 218 ("[I]n retaliation cases, courts must determine 'what made [the employer] fire [the employee] when it did.'"). The objection fails to present sufficient evidence to show that the employer's reasons were not the true reasons for her written warning and subsequent termination but were pretext for a retaliatory reason.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 70) and incorporates it by reference.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (DE 50) is granted and this action is dismissed.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, S.C.
September 8, 2022